```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

SAFAA HAKIM, M.D.,                  :
                                    :
     Plaintiff,                     :
                                    :
v.                                  :   No. 3:99CV1143(DJS)
                                    :
THE WILLIAM BACKUS HOSPITAL         :
and BRIAN BENTON, M.D.,             :
                                    :
     Defendants.                    :
```

## MEMORANDUM OF DECISION AND ORDER

Defendant the William Backus Hospital ("the Hospital" or "Backus") has filed two motions for sanctions in the form of dismissal (dkt. #s 244 & 249).  On the basis of the representations set forth in the Hospital's moving papers, Hakim's responses thereto and other relevant filings, and the parties' supplemental briefs addressing recent developments, the court finds that, pursuant to Rule 37 of the Federal Rules of Civil Procedure, sanctions against Hakim are warranted.  The court further finds that dismissal with prejudice of this action is necessary.  Therefore, the Hospital's motions are **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

Hakim advances several causes of action based upon state and federal anti-discrimination laws and state tort law against the Hospital and Brian Benton, M.D.  This lawsuit concerns the Hospital's termination of Hakim from her position as a staff

physician at the Hospital.

In August of 1992, Backus hired Hakim as a staff psychiatrist designated to work at the Center for Mental Health ("CMH"). The CMH facility provided out-patient care to Backus patients and was under the general supervision of Backus' Department of Psychiatry. Backus' in-patient treatment ward ("D1"), was also under the supervision of the Department of Psychiatry. Plaintiff received hospital privileges consistent with her employment on a provisional basis in 1992 and an associate basis in 1994.

Plaintiff expressed displeasure at the manner in which the CMH and the D1 ward were staffed and administered. In November of 1996, plaintiff raised concerns with the CEO of Backus and the Senior Vice-President for Patient Care about the quality of services provided by Benton, who was the Chief of the Psychiatric Services, and Irwin August, M.D. ("August"), who was a full-time physician assigned to the D1 ward. Specifically, plaintiff believed that Benton was neglecting his duties as D1 supervisor by avoiding treating patients with no insurance and by being absent from work, which placed a burden upon August that he was not able to bear. Plaintiff also alleges that Benton treated her poorly.

Plaintiff alleges that Benton retaliated against her for raising questions with senior hospital staff about his job

performance.  She alleges that, in November of 1996, Benton falsely accused plaintiff of misconduct and then initiated, or caused to be initiated, an investigation regarding plaintiff's professional competence.  Plaintiff also alleges that she had an altercation with August regarding the care of one of August's patients subsequently assigned to plaintiff.  Soon after this altercation, on March 20, 1997, plaintiff and August had another dispute regarding whether plaintiff should provide treatment to D1 patients even though she requested to be excused from doing so.  Immediately following this second dispute, plaintiff consulted a physician, who pronounced her too ill to work.  After consulting this physician, Hakim left the hospital.  Backus then terminated her employment as of the next day.

Plaintiff claims, inter alia, that she was treated differently than other Backus employees on four general bases. First, on the basis of her gender, she claims that she was given less responsibility than August, that her suggestions and observations were continually overlooked in favor of male employees' input, and that she was the subject of discriminatory comments.  Plaintiff claims that a male employee in her situation would not have been terminated.  Second, she claims that Backus's administration ignored her protests regarding this disparate treatment and that retaliation was a motivating factor in the decision to terminate her employment.  Third, plaintiff claims

that Backus and Benton engaged in a pattern of retaliatory conduct designed to silence plaintiff's complaints about the quality of care at Backus. Fourth, plaintiff alleges that Backus terminated her because she suffers from a disability, or Backus' perception of her disability, and refused to provide her a reasonable accommodation while she was employed.

The basis for the pending motions is Hakim's alleged failure to conduct discovery in good faith. On February 19, 2003, the court issued a comprehensive order addressing the parties' discovery motions. In this order, the court sustained and overruled certain objections plaintiff posed to defendants' discovery requests, and, pursuant to Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure, ordered plaintiff to serve responses by March 21, 2003. She failed to do so. On April 29, 2003, Backus filed a second Rule 37 motion seeking plaintiff's compliance with the court's February 19, 2003 order. This motion asserted numerous areas of non-compliance. On May 6, 2003, the court ordered the following pursuant to Rule 37(a)(2)(A):

> On or before May 16, 2003, plaintiff shall re-serve upon Backus supplemental responses to Backus' second set of interrogatories and fourth set of requests for production that:
>
>   a. are sworn to by plaintiff;
>
>   b. provide a description of at least one sentence describing the substance of the persons' listed in response to interrogatory number 14 knowledge of the events giving rise to this lawsuit;

        c.    provide the name of the patient on whose behalf she testified as an expert witness, unless the court case or deposition testimony was sealed, which, if so, plaintiff must represent to Backus under oath; and

        d.    provide a copy of all materials sent by plaintiff to each expert witness disclosed by plaintiff.

(Dkt. # 238.)  The court notified plaintiff that "[s]hould plaintiff fail to serve these supplemental responses, or should the court deem them patently insufficient, plaintiff will be subject to sanctions, including dismissal of her lawsuit."  (Id.)  Plaintiff did not comply with this order by the date specified.  Hakim served verified supplemental interrogatory responses upon the Hospital in accord with the court's first directive, but did not provide the information she was ordered to provide in the court's remaining three directives.  On May 30, 2003, the court directed plaintiff to appear on July 7, 2003 to demonstrate why her case should not be dismissed.  At Hakim's request, this hearing was continued until August 21, 2003.  In the interim, Backus submitted supplemental materials detailing plaintiff's failure to comply with other discovery requests and her conduct during the discovery process in general.

    On August 21, 2003, the parties appeared for the hearing, and, shortly before the start of this hearing, Mary Alice Leonhardt, Esq., Hakim's counsel, filed her fifth motion to withdraw as Hakim's counsel to the court and requested that the

court decide her motion to withdraw prior to commencing the Rule 37 proceedings set to begin that day.  The court granted this request, excused all but Leonhardt, her associate, and Hakim from the courtroom, and conducted a sealed hearing.  Following this hearing, the court re-convened the Rule 37 proceeding and denied Leonhardt's fifth motion to withdraw.  Leonhardt then announced her intention to take an interlocutory appeal.  At this point, the court adjourned the Rule 37 hearing, and stayed all proceedings at the district court level pending resolution of Leonhardt's appeal.  On March 16, 2005, the Court of Appeals for the Second Circuit vacated this court's denial of Leonhardt's fifth motion to withdraw and remanded the case to this court.  Upon receipt of the mandate from the Court of Appeals, this court granted Leonhardt's motion to withdraw on May 10, 2005.  Hakim entered a pro se appearance on July 6, 2005.

On October 26, 2005, this court issued an order "afford[ing] Hakim another opportunity to demonstrate her willingness to comply with the Federal Rules of Civil Procedure and this court's directives before deciding the Hospital's pending motions for sanctions" by ordering her to respond to specific directives.  (Dkt. # 304.)  Given the state of discovery in this case, and the amount of time that had passed during the interlocutory appeal, the court decided to alleviate any possible confusion regarding the pendency of objections to defendants' requests.  Also, Hakim

suggested that Leonhardt was at fault for Hakim's past transgressions, and the court wanted to provide Hakim with an opportunity to comply on her own.  The court warned Hakim that "[s]hould plaintiff fail to fully comply with these directives, in good faith, the court may dismiss her lawsuit with prejudice pursuant to Rule 37 of the Federal Rules of Civil Procedure."  (Id.)  After obtaining an extension of time from this court, Hakim served responses upon defendants on November 21, 2005, January 31, 2006, and March 7, 2006.

At Hakim's request, decision of these pending motions has been postponed until the Hospital provided certain discovery materials to her, which it did in April of 2006.  The court then requested supplemental briefs, the last of which was filed on June 9, 2006.  Upon receipt of the final briefs, this matter is fully submitted and ready for decision.

## II. DISCUSSION

The Hospital requests sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure, which provides, in pertinent part, the following:

> If a party . . . fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: . . .
>
> An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed,

>     or dismissing the action or proceeding or any part
>     thereof, or rendering a judgment by default against the
>     disobedient party. . . .

Fed. R. Civ. P. 37(b)(2)(C).  "A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." Penthouse Intern., Ltd. v. Playboy Enterprises, Inc., 663 F.2d 371, 386 (2d Cir. 1981).

### A. BASIS FOR SANCTIONS

The predicate for imposition of sanctions pursuant to Rule 37(b) is failure to obey a lawful order from this court. "Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991).

Hakim failed to comply with this court's May 6, 2003 order. In this order, the court listed four specific directives and warned that failure to comply could result in dismissal of Hakim's lawsuit. See Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 764 (2d Cir. 1990) ("Under the circumstances of the present case, we conclude that before the district court could impose the harsh sanction of dismissal against this pro se litigant, it should have informed her that violation of a court order would result in a dismissal of her case with prejudice.").

Despite the court's order clearly stating the four tasks Hakim must perform, she elected to perform one task only: to sign her discovery responses.  Hakim did not supplement her responses in any way in response to the court's May 5, 2003 order within the time period set forth in that order.  Her subsequent "substantial" compliance, as described in her submission to the court on August 20, 2003, the day before the hearing on defendant's motions, does not cure her original intransigence. See Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir. 1979) ("[P]laintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall.").  For example, Hakim admitted that she decided to withhold production of the materials she sent to Howard Iger, M.D., whom Hakim wishes to call as an expert witness in this matter, so that she could conduct a forensic examination of Iger's file to determine whether it had been tampered with.  (See Dkt. # 260 at 4 ("Plaintiff contends that this file has been tampered with, but will transmit this material upon completion of a forensic analysis of the file.").)  This court's May 5, 2003 order did not permit Hakim to unilaterally set conditions upon which materials may be produced, but rather simply ordered that

Hakim produce the file to defendants.

Further, Hakim's subsequent efforts to meet her obligations by complying in full with this court's October 26, 2005 order have failed.  As the Hospital points out, this court's October 26, 2005 order "was a limited set of discovery directives that did not encompass all of the items that Backus has argued as a basis for its Rule 37 Motions" and that "Hakim was given wide latitude by the Court to 'cure' her default and demonstrate her good faith."  (Dkt. # 352 at 3 n.2 (emphasis omitted).) Essentially, the court reviewed defendants' catalogue of outstanding discovery and selected requests that are fundamental to defendants' preparation for trial, resolved (or re-stated the resolution of) any objections, and ordered Hakim to provide an unconditional response.  Although Hakim did provide some information in response to the court's order, which is either provided to the court or indexed in court filings, her efforts fall short of demonstrating her ability to comply with this court's orders in the future.

The two main themes of the discovery requests to which the court ordered Hakim to respond are a familiar source of discord in this case.  First, the court ordered production of materials and information Hakim sent to her testifying experts.  This information is vital to defendants' ability to render an informed evaluation of the expert's opinion.  This information is

exceptionally vital with respect to Iger because he has, with the benefit of a substantial amount of information provided by Hakim, including patient records, made some damaging accusations against the Hospital.  In fact, Hakim cites Iger's report at every turn as evidence of the Hospital's malfeasance, and has included this report in many public filings.  Remarkably, Hakim has still not produced the materials she sent to Iger, despite the fact that both her and Leonhardt admitted at the August 21, 2003 hearing that the materials were prepared and ready at Leonhardt's office,[1] and Leonhardt represented to this court that Hakim may collect her complete file at any time (see dkt. # 362).  Instead, Hakim imposes absurd conditions under which she will produce the information or claims that Iger himself has imposed these conditions, despite the court's order to the contrary.  Regardless of the particular reason, Hakim and Iger have precluded defendants from effectively rebutting what has, through Hakim's own conduct and public filings, become the linchpin of her accusations of patient mistreatment against the Hospital.

Second, the court ordered Hakim to produce materials detailing the income she derived from her practice of medicine

---

[1] Hakim admitted to this during the August 21, 2003 hearing on Leonhardt's fifth motion to withdraw, which was held in a sealed courtroom ex parte.  (See Dkt. # 267 at 52:14-16.)  Although defendants do not have access to the transcript of this proceeding, the court is obliged to consider the entire record compiled in this case.

for the years 1994 through the present.  Hakim has made a substantial claim for damages against the Hospital and alleges that the termination of her employment from the Hospital severed an important source of patient referrals, thereby adversely impacting her own private practice.  Apparently, Hakim's economic damages expert, whom she no longer wishes to call as a witness, estimated the damages at $1.5 million several years ago.  Despite this claim, Hakim has still not produced any information regarding her practice from which defendants may effectively evaluate the sufficiency of her damages claim.  As the Hospital's supplemental memorandum explains, Hakim has produced snippets of information but has not provided a complete picture of how her practice operates and how much revenue is actually derived therefrom.  As a professional operating her own practice and a litigant making a claim for a substantial amount of damages, Hakim's compliance falls well short of what is required by good faith.

The court therefore finds that Hakim failed to comply with this court's May 5, 2003 directives, which were imposed under the authority of Rule 37(a), and that her inability to comply with this court's directives imposed pursuant to Rule 37(a) continues to this day.

B. SANCTION OF DISMISSAL WITH PREJUDICE

Having found that Hakim violated Rule 37(b), the court must determine the appropriate sanction to impose upon her.  Dismissal with prejudice is the appropriate sanction.  As Rule 37 states, dismissal with prejudice is permitted as a sanction under appropriate circumstances.  "Dismissal under Rule 37 is warranted, however, where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault."  John B. Hull, Inc. v. Waterbury Petroleum Products, Inc., 845 F.2d 1172, 1176 (2d Cir. 1988); see Urban Elec. Supply and Equipment Corp. v. New York Convention Center Development Corp., 105 F.R.D. 92, 98 (E.D.N.Y. 1985) ("[C]ontinued failure to obey this court's discovery orders warrants the imposition of the sanction of dismissal with prejudice. . . .").  "[A]lthough the most drastic sanctions may not be imposed as 'mere penalties,' . . . courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault."  Cine Forty-Second St. Theatre Corp., 602 F.2d at 1066.

> Numerous factors are relevant to a district court's exercise of its broad discretion to order sanctions under Rule 37, including (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of his non-compliance. See Bambu

>Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995).  In addition, an award of sanctions under Rule 37 should effectuate its three purposes: (1) obtaining compliance with discovery orders; (2) ensuring the disobedient party does not benefit from non-compliance; and (3) providing a general deterrent in the particular case and litigation in general. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 . . . (1976); . . .  The Court may consider the full record in the case in order to select the appropriate sanction. . . .

Abreu v. City of New York, 208 F.R.D. 526, 529 (S.D.N.Y. 2002).

Rule 37(b)(2)(C) gives the court considerable discretion in fashioning an appropriate sanction, however, willfulness, bad faith, or gross negligence must be found before a case may be dismissed.  "Non-compliance may be deemed willful 'when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control.' . . .  In addition, 'a party's persistent refusal to comply with a discovery order' presents sufficient evidence of willfulness, bad faith or fault. . . ." Abreu v. City of New York, 208 F.R.D. 526, 530 (S.D.N.Y. 2002).

Hakim's violation of this court's Rule 37(a) directives was willful.  The court distilled plaintiff's obligations into clear directives, by which she failed to abide even under the express pain of dismissal of this lawsuit.  Hakim's conduct was willful because her actions were consistent with her stated objective: to prove that the Hospital, specifically Benton and August, mistreated patients.  Even if she can successfully prove this

-14-

assertion, the manner in which the Hospital treated patients is only tangentially related to how the Hospital treated her as an employee, which is the central issue in this lawsuit. Hakim's past behavior

- in seeking, several times, to amend her complaint to add claims rejected by the court on more than one occasion;

- in seeking irrelevant materials, such as Benton's tax returns, from the Hospital through the discovery process, even when the court has ruled that she is not entitled to these materials;

- in filing documents with the court with absolutely no relevance to the matters pending before the court in an attempt to sully the Hospital's reputation;

- in disseminating confidential information learned from her position at the Hospital to public sources;

- in making outrageous demands upon her former counsel regarding matters outside the scope of her lawsuit;

- in accusing her former counsel (both Leonhardt and Phillip Walker, Esq.), a judge of the Connecticut Superior Court, and others of being complicit in a scheme to cloak the Hospital's misconduct;

- in submitting to this court in the form of public filings documents ordered sealed from public view by this court and the Connecticut Superior Court; and

- in otherwise transforming an employment discrimination lawsuit into a personal crusade against the Hospital

compels the conclusion that Hakim will not, in the future, comply in good faith with either the law or the directives of this

court.  Hakim's bullish persistence in trying to "expose" the Hospital transcends the customary level of animosity present between parties to a lawsuit and rises to the level of bad faith because she has demonstrated that there is no rule, law, or sage advice from a competent professional that will deter her from proceeding in a manner she deems consistent with her stated objective.

The fact that Hakim believes that her cause is righteous does not mean that her actions in this lawsuit were taken in good faith.  Hakim repeatedly asserts that her lawsuit is of grave public importance because she questions the quality of care provided to the Hospital's patients.  Hakim apparently holds firm beliefs regarding patient care and professional standards; to the extent she feels compelled to take action against the Hospital regarding her compunctions, she must resort to other means available to her within her profession and other appropriate public authorities.  Hakim may not, however, use the federal courts to pursue interest beyond those raised in her complaint.  As a plaintiff in a lawsuit, she is bound to follow the rules and directives of this court, even when she deems these laws and directives to be inconsistent with advancing her cause against the Hospital.

As a result, Hakim's conduct has caused the Hospital to suffer prejudice, and allowing Hakim to proceed with this lawsuit

would almost certainly cause the Hospital prejudice in the future.  Hakim's willful intransigence has rendered the Hospital unable to effectively explore the basis of Hakim's serious accusations against it.  It is a fundamental tenet of federal civil procedure that the court is not in a position from which it may effectively gauge the sufficiency of a party's compliance with the other party's discovery requests.  Discovery is conducted outside the presence of the court because only the respondent party is in a position to know what responsive materials exists.  The court can only bring about disclosure of information through the party itself.  Where, as here, the court cannot leave a party to its duty to fully and fairly disclose materials and information related to the claims made in the lawsuit, the process has been irreparably compromised.  To expose the Hospital to a trial by ambush, subject to Hakim's whim, would be a manifest error.

The court cannot over-emphasize the fact that it has no confidence that Hakim can litigate this matter in good faith.  After claiming that Leonhardt was the source of her prior intransigence, Hakim's recent conduct has conclusively proven otherwise.  In fact, without Leonhardt's representation, Hakim has filed more frivolous motions, and has failed to respond in good faith to the court's invitation to cure the glaring discovery deficiencies still present in this case.  There is

simply no basis for the court to conclude that Hakim would appropriately respond to this court's efforts to ensure fairness in the process. Without the ability to cure Hakim's transgressions, the court would, in violation of its duty to provide a fair and neutral forum for dispute resolution, be allowing an infirm proceeding to continue.

Therefore, Hakim's complaint is dismissed with prejudice for the following reasons:

- Hakim's failure to comply with this court's Rule 37(a) directive was willful.

- Because of Hakim's propensity to disregard court orders, and her stated objective to "expose" the Hospital's alleged malfeasance at all costs, the court cannot effectively mitigate prejudice to the Hospital by means of lesser sanctions.

- Hakim's misconduct has persisted over the course of at least two years.

- Hakim has willfully failed to comply with this court's directives despite being expressly warned, on several occasions, that her lawsuit could be dismissed with prejudice.

### III. CONCLUSION

For the reasons set forth herein, the Hospital's motions for sanctions in the form of dismissal (dkt. #s 244 & 249) are **GRANTED in part** and **DENIED in part**. Specifically, the Hospital's request for an order dismissing this lawsuit with prejudice is **GRANTED**, and the motion is **DENIED** in all other respects, including the Hospital's request for attorney's fees.

The Clerk of the Court shall close this file.

So ordered this 28th day of June, 2006.

/s/DJS
_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**